## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

MARSHA ELAINE JOHNSON,     )
        )
    Plaintiff,     )
        )
    v.     )     Case No. 1:19-CV-00208 NAB
        )
KILOLO KIJAKAZI[1],     )
Commissioner of Social Security,     )
        )
    Defendant.     )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Marsha Elaine Johnson's appeal regarding the denial of disability insurance benefits under the Social Security Act. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 7.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence.  Based on the following, the Court will affirm the Commissioner's decision.

### I.    Background & Issues for Review

Johnson applied for benefits under Titles II and XVI of the Social Security Act on October 24, 2016, alleging disability as of January 8, 2016 due to muscle spasms and swelling. (Tr. 211-217.) After her application was denied at the initial administrative level, Johnson requested a hearing before an administrative law judge ("ALJ"). Following a hearing on January 14, 2019, the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

ALJ issued a written decision on March 4, 2019 denying Johnson's application. On March 8, 2019, Johnson requested that the Appeals Council review and remand with instructions to find Johnson disabled as of her 50th birthday, January 16, 2017. (Tr. 35.) Johnson's request for review by the Appeals Council was denied on December 10, 2019. (Tr. 1-8). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Johnson presents four issues for review. First, she asserts the ALJ erred by concluding that Johnson's chronic low back pain and degenerative disc disease of the lumbar spine was not a severe medical impairment. Second, she asserts the ALJ erred by not giving Johnson's treating physician's opinion any weight and by not adopting the treating physician's opinion as to Johnson's physical limitations. Third, she asserts the ALJ erred by concluding Johnson was capable of light work while also concluding Johnson was unable to perform her past relevant work. Fourth, she asserts the ALJ erred by not finding Johnson disabled as of her fiftieth birthday or January 16, 2017, according to Medical-Vocational Rule 201.09.

After the filing of Johnson's brief in support of her Complaint and the Commissioner's brief in support of the Answer, Johnson independently filed a motion to submit additional evidence. (Doc. 24.) In her motion, Johnson asks the Court to add to the record the Notice of Award in a subsequent claim for disability benefits wherein the Social Security Administration found Johnson disabled as of the day after the ALJ's decision in the present case.

## II.    Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

2

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled.  20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled.  20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court

may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## III.    Discussion

### A.    ALJ's Decision

The ALJ found that Johnson met the insured status requirements of the Social Security Act through December 31, 2020 and that she had not engaged in substantial gainful activity since January 8, 2016, the alleged onset date. (Tr. 12.) Next, the ALJ found that Johnson had the severe impairments of mixed connective tissue disease, obesity, and intellectual disorder. (Tr. 13.) The ALJ found that Johnson's lumbar degenerative disc disease was a non-severe impairment, and that Johnson's lupus and fibromyalgia were not medically determinable impairments. (Tr. 13-14.)

The ALJ determined that Johnson did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 14.) The ALJ also determined that Johnson had the residual functional capacity to perform a range of light work except she can never climb ladders, ropes, or scaffolds; should avoid all exposure to extreme temperatures; and should have only occasional exposure to operational control of moving machinery, unprotected heights, and the use of hazardous machinery. The ALJ determined Johnson is able to occasionally climb ramps and stairs, as well as balance, crawl, crouch, kneel and stoop. (Tr. 18.) The ALJ found that Johnson was not capable of

performing past relevant work that would correspond to that of a home health aide or a security guard. (Tr. 24.) The ALJ stated Johnson was 48 years old at the time of her alleged onset date and consequently considered as a younger individual (18-49), and Johnson changed age category on her 50th birthday to closely approaching advanced age (50-54). Based on the foregoing, and in reliance on the testimony of a vocational expert, the ALJ found that considering her age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Johnson is capable of performing, such as such as maid or housekeeper or cashier. (Tr. 25-26.) Therefore, the ALJ ultimately concluded that Johnson was not under a disability, as defined by the Social Security Act, from January 8, 2016 through March 4, 2019.

### B.   Severe Medical Impairment

Johnson first argues the ALJ erred by concluding her back pain and degenerative disc disease were not severe impairments. Specifically, Johnson argues that her back pain was clearly established by numerous doctor's notes which confirm she has difficulty walking and that walking causes her more back pain. She also testified that the back pain was an issue for more than seven years and interfered with her daily work activities. (Tr. 481, 61.) Defendant responds that the Johnson did not seek treatment for more than a year after the alleged onset date, and the ALJ's opinion is substantially supported by the evidence.

At step two of the sequential process, the ALJ must determine that the claimant has a severe mental or physical impairment that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii); 416.909, 416.920(a)(4)(i)-(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); 20 C.F.R §§ 404.1520(c), 416.920(c). Basic work activities mean the abilities

5

and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). Although this burden may not be high, it nevertheless remains the plaintiff's burden to establish that his impairment or combination of impairments is severe. *Mittelstedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); 20 C.F.R. § 404.1512(a). If plaintiff cannot show that an impairment has more than a minimal effect on his ability to work, then the impairment is not severe. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). While this requirement may not be onerous, it is still not a "toothless standard." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

In this case, the ALJ acknowledged that he must determine whether Johnson's impairments or combination of impairments are severe. (Tr. 11.) He found that Johnson had the severe impairments of mixed connective tissue disease, obesity, and intellectual disorder. (Tr. 13.) He then relied on specific medical evidence to determine that Johnson's degenerative disc disease was not severe, and that Johnson's lupus and fibromyalgia were not medically determinable impairments. (Tr. 13-14.) The ALJ acknowledged Johnson's testimony regarding her stabbing pain in her low back that radiates into both of her legs, and noted that providers interpreted a June 13, 2017 lumbar x-ray to suggest mild degenerative disc disease of the L5-S1 with minimal anterolisthesis. (Tr. 13, 431.) The ALJ also noted that Johnson presented for her February 10, 2017 consultative exam with a normal gait, using no assisted device, and consultative examiner Dr. Critchlow documented normal lumbar range of motion and negative seated and standing straight leg raise testing. (Tr. 351-353.) Johnson's primary care provider, Dr. Laurel Campbell, noted that an April 17, 2017 nerve conduction study was normal. (Tr. 422.) The ALJ also considered that as

recently as June 8, 2018, Johnson reported to Dr. Campbell that she had been walking for exercise. (Tr. 537.)

Although the ALJ found that Johnson's degenerative disc disease was not a severe medical impairment, in going through the sequential evaluation process to determine which alleged limitations were supported by the evidence, he expressly considered Johnson's complaints of back pain, joint aches, and muscle spasms. (Tr. 19-20.) *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ also considered evidence from the treating provider records that sometimes noted mild or moderate pain diffusely throughout the spinal region, although the records noted Johnson's range of motion was typically within normal limits. (Tr. 20, 485,490, 494, 502, 510, 517, 532, 534.) Additionally, in considering Johnson's severe medical impairment of mixed connective tissue disease, he considered her symptoms of muscle spasms and musculoskeletal pain, and stated that to the extent the symptoms caused functional limitations, the ALJ accommodated them by limiting Johnson to work performed at a light exertional level, with additional postural and environmental restrictions. (Tr. 20.) This analysis demonstrates that the ALJ adequately considered the limitations attributable to Johnson's back pain and mild degenerative disc disease, whether or not he found them to be a severe impairment. *See Hankinson v. Colvin*, No. 4:11-CV-2183-SPM, 2013 WL 1294585, at *12 (E.D. Mo. Mar. 28, 2013) ("[F]ailing to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis."); *Givans v. Astrue*, No. 4:10–CV–417–CDP, 2012 WL 1060123, at * 17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining the RFC); *see also* 20 C.F.R. §§ 404.1545(a)(2) ("If you have more than one

impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). Thus, the ALJ did not err in finding that Johnson's back pain and degenerative disc disease were not severe impairments.

### C.    RFC Evaluation

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907. It is the claimant's burden to establish his RFC. *Masterson,* 363 F.3d at 737. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932.

### 1.    Weight of Treating Physician Testimony

Johnson argues that the ALJ erred by affording no weight to the treating source statements of Dr. Campbell, Johnson's primary care physician. Defendant responds that given the

---

[2] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  SSR 96-8p, 1996 WL 374184, at *1.

inconsistencies between the medical record and treatment notes, the ALJ's decision not to assign any weight to Dr. Campbell's opinion was appropriate.

On July 20, 2017, Dr. Campbell completed a "Medical Statement and Opinion by Treating Physician." (Tr. 480-481.) Dr. Campbell stated that Johnson's diagnoses were lateral femoral cutaneous entrapment syndrome; pain in muscle joints; mixed connective tissue disease; and musculoskeletal pain. (Tr. 480.) Dr. Campbell found that on the most recent examination, "patient ambulates without aid of walker. States she has back pain and spasms and is unable to walk or stand for periods of time." (Tr. 480.) She listed treatments of "anti-inflammatory medication, pain management. Physical therapy as tolerated. Weight loss. Referral to rheumatologist Dr. Nivedita Nagam." (Tr. 480.) Dr. Campbell opined that Johnson could stand only 15 minutes at one time, could sit only 30 minutes at one time, and could work zero hours per day. She further opined that Johnson suffered from moderate pain, and it would be severe enough to interfere with attention and concentration needed to perform simple work tasks frequently. Dr. Campbell further noted "This patient has only been coming to my clinic since 4/13/2017." (Tr. 480.)

On November 26, 2018, Dr. Campbell completed a "Physical Residual Functional Capacity Questionnaire." (Tr. 540-542.) Dr. Campbell stated that Johnson's diagnoses were dizziness, neck pain, back pain, and lupus, and her prognosis was fair. Her symptoms were poor balance, dizziness, pain, and stiffness, with moderate neck and back pain. Dr. Campbell stated the treatment and response were to refer to restart physical therapy for dizziness; for Johnson to use a cane; and pain medication. (Tr. 540.) Dr. Campbell opined that Johnson could stand/walk less than 2 hours and could sit at least 6 hours. (Tr. 541.) Dr. Campbell left blank the question of the earliest date that the description of symptoms and limitations in this questionnaire applies. (Tr. 542.)

9

Under the regulations applicable to Johnson's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2).[3] *See also Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted). However, a treating physician's opinion is not inherently entitled to controlling weight. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.' " *Goff*, 421 F.3d at 790 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ may also "discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6). "When an ALJ discounts a treating

---

[3] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c.

physician's opinion, [the ALJ] should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir.2007) ). It is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's assessment of the opinion evidence should not be disturbed so long as it falls within the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

As a preliminary matter, the Court notes that although the ALJ stated that he was giving "no weight" to Dr. Campbell's treating source statements, the ALJ partially accounted for Dr. Campbell's opinion that Johnson had significant limitations by limiting Johnson to work performed at a light exertional level, with additional postural and environmental restrictions. Light work is defined in the regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Notably, in determining the appropriate exertional level, the ALJ also discounted the opinion of non-examining State agency medical consultant Kevin Threlkeld, M.D., who opined in a February 21, 2017 assessment that Johnson was able to work at the full range of the medium exertional level. (Tr. 86.) The ALJ also imposed additional limitations, finding that Johnson could not climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, as well as balance, crawl, crouch, kneel, and stoop; should avoid all exposure to extreme temperatures; and should have only occasional exposure to operational control of moving machinery, unprotected heights, and the use of hazardous machinery. (Tr. 18.)

11

To the extent that the ALJ did discount Dr. Campbell's opinions, the Court finds that the ALJ gave good reasons, supported by substantial evidence, that brought the ALJ's decision within the available "zone of choice." First, Dr. Campbell's July 20, 2017 Medical Statement and Opinion was completed after a little more than three months of treatment and appeared to be based on Johnson's subjective complaints. (Tr. 22.) For example, the "Finding on Most Recent Examination" reports that "Patient ambulates without aid of walker. States she has back pain and spasms and is unable to walk or stand for periods of time." (Tr. 480.) Dr. Campbell explicitly noted that their treatment relationship only began on April 13, 2017. (Tr. 480-81.) The ALJ reasonably noted that this opinion appeared to be based on Johnson's subjective complaints. The Eighth Circuit has repeatedly found it appropriate for an ALJ to discount a doctor's report where it is based largely on a claimant's subjective complaints. *See Renstrom*, 680 F.3d at 1064 (citing *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) ). *See also Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014).

The ALJ also reasonably found that Dr. Campbell's opinions were not fully supported by the clinical findings in her own treatment notes. (Tr. 22.) Dr. Campbell generally reported minimal objective musculoskeletal findings, often noting that Johnson reported pain, but on exam musculoskeletal and all four extremities were normal, with no edema or mild edema. (Tr. 417, 421, 492, 498, 517, 532.) For example, in Dr. Campbell's November 26, 2018 Physical RFC Questionnaire, she stated Johnson had moderate neck and back pain, poor balance, dizziness, and stiffness, and that she is unsteady and should use a cane to assist with walking. (Tr. 540-541.) However, in the 2018 office visits leading up to the November 2018 RFC, Dr. Campbell's physical exam showed no back or neck pain, normal range of motion, and that Johnson had been walking, exercising at the YMCA and in the pool, and had lost 27 pounds. (Tr. 532, 534, 536, 537.) During

12

the same time frame, Dr. Nagam documented that Johnson reports better control of her symptoms with new medication, and improved symptoms and improved musculoskeletal pain. (Tr. 492, 496, 498, 499.) Dr. Campbell's exam findings and her recommendations of staying active, regular exercise and a YMCA membership are inconsistent with Dr. Campbell's RFC. *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); *see also Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (discounting treating physician statement opining that claimant could not sit, stand, or walk for more than 20 minutes at a time or one hour total per day where no similar restrictions were included in her treatment records, and the consulting doctor concluded that the applicant could sit, stand, or walk up to six hours per day); *Reid v. Colvin*, No. 4:14-CV-916 JAR, 2015 WL 5485397, at \*12 (E.D. Mo. Sept. 16, 2015) (discounting treating physician's RFC where "Dr. Baker states that Reid requires a cane and experiences dizziness; however, these statements are not corroborated in his treatment notes, or elsewhere in the medical record").

Moreover, the fact that Dr. Campbell was the only treating source to provide an opinion regarding Johnson's physical limitations does not mean the ALJ was required to accept it. An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). The ALJ may reject the conclusions of any medical expert if they are unsupported and inconsistent with the record as a whole. *See Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Bentley v. Shalala,* 52 F.3d 784, 787 (8th Cir. 1995)).

Upon review of the record, the Court concludes the ALJ properly evaluated Dr. Campbell's medical opinion and provided sufficient explanation for giving her RFC opinions no weight. The

Court finds, therefore, that the ALJ's decision to discount the opinion of Dr. Campbell is supported by substantial evidence on the record as a whole.

### 2. Disability Determinations at Steps Four and Five

Johnson contends that the ALJ erred by concluding she was capable of light work while also concluding she was unable to perform her past relevant work. Specifically, Johnson argues that the finding that she could not do her past relevant work, which includes light work, means that Johnson would also not be capable of performing the comparative employment of maid/housekeeper and cashier. Defendant acknowledges the discrepancy, but argues it is of little consequence because the ALJ went on to determine that there were other jobs in the national economy that Johnson could perform, which results in the finding that she is not disabled.

Melinda Stahr, a vocational expert, testified at Johnson's hearing. She reviewed Johnson's file and characterized her past relevant work as a home health aide, DOT (Dictionary of Occupational Titles) number 354.377-014, SVP (Specific Vocational Preparation) of 3, semi-skilled, medium physical demand level. (Tr. 67.) Her work experience as a security guard, DOT number 372.667-038, has an SVP of 3, semi-skilled, and light work. (Tr. 69.) Ms. Stahr opined that there were no transferable skills to sedentary work for either past relevant job. (Tr. 69.)

For the first hypothetical, Ms. Stahr was asked to testify about the employment opportunities for a person approaching advanced age with Johnson's education and work experience who was able to perform light work, who could never climb ladders, ropes, or scaffolds, "and the remaining postural are occasional to include balances at occasional." Additionally, the person needed to avoid all exposure to extreme temperatures and would be limited to occasional exposure to operation/control of moving machinery, unprotected heights, or the use of hazardous machinery. (Tr. 70.) According to Ms. Stahr, such an individual would have the ability to do both

14

of Johnson's past relevant jobs as a home health aide or a security guard. Ms. Stahr further testified that the hypothetical individual could perform the job of a maid or housekeeper, which is light, SVP 2, unskilled, with approximately 500,000 of those jobs nationally. Ms. Stahr testified that the hypothetical individual could also perform the job of cashier, which is light physical demand level, SVP 2, unskilled, with approximately 1.4 million of those jobs nationally. (Tr. 71.)

For the second hypothetical, the ALJ told the vocational expert "I want you to assume everything's the same as the first hypothetical except exertionally they're limited to sedentary work. Posturals remain the same, environmentals remain the same, and in this case we'd be dealing with a younger individual with a limited education. Would that person be able to do any of the past relevant work?" (Tr. 71.) Ms. Stahr testified that this second hypothetical individual could not perform the past work. She gave three examples of jobs the second hypothetical person could do: information clerk, table worker, or a document preparer. (Tr. 71.) All three examples are sedentary work, SVP 2, and unskilled positions. (Tr. 71.)

The ALJ then asked Johnson's counsel if he had any questions for the vocational expert on behalf of Johnson. Johnson's counsel declined to take the opportunity to ask further questions of Ms. Stahr. (Tr. 72.)

In the ALJ's decision, he stated that Johnson is unable to perform any past relevant work. (Tr. 24.) He incorrectly stated that the vocational expert also found Johnson is not capable of the past relevant jobs, as the above testimony reflects that the vocational expert found a person with the RFC described by the ALJ *could* perform the past relevant jobs. (*Compare* Tr. 24 *and* 70.) The ALJ mistakenly stated that he "concur[s] with the vocational expert and find[s] that the claimant is unable to perform this past relevant work. Pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the DOT." (Tr. 25.)

The ALJ's misstatement as to the vocational expert's testimony is harmless because the ALJ went on to find that although Johnson could not perform the past relevant work, Johnson could perform other jobs that exist in significant numbers in the national economy, such as a maid/housekeeper or cashier, both of which are categorized as light, unskilled work. *See Gray v. Astrue*, No. 08-00057-CV-W-NKLSSA, 2008 WL 4816986, at *8 (W.D. Mo. Oct. 28, 2008) ("even if the ALJ's findings with regard to Gray's ability to perform her past relevant work at step four were deficient, the ALJ went on to determine at step five that Gray was not disabled, and that determination was supported by substantial evidence").

Finally, Johnson contends that the ALJ incorrectly determined that the medical-vocational guidelines supported a finding of "not disabled." At step five, in making a final determination as to disability, an ALJ first looks to the Tables or "grids" set forth in Appendix 2 to Subpart P. However, pursuant to the regulations,

> where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R. § 404, Subpt. P, App. 2, § 2.00(e)(2). Here, the ALJ acknowledged that if Johnson had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by the medical-vocational guidelines set out in 20 C.F.R. § 404, Subpt. P, App. 2, specifically Rules 202.18 (for a younger individual, with semi-skilled previous work, and skills not transferable) and 202.11 (for an individual closely approaching advanced age, with semi-skilled previous work, and skills not transferable).  The ALJ determined that "the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional

16

limitations," and so, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with Johnson's age, education, work experience, and RFC. (Tr. 25.) As discussed above, the vocational expert responded in the affirmative, finding that Johnson could perform the job of maid/housekeeper or cashier. The ALJ relied on Ms. Stahr's testimony, as well as the documentary and testimonial evidence reflecting Johnson's successful history of maintaining semi-skilled employment as a home health aide for over 10 years and as a security guard for at least 3 years.

Johnson argues that the ALJ should have applied Grid Rule 201.09 because it applies to individuals approaching advanced age, with limited or less education, no transferable job skills, and an RFC limiting the individual to sedentary work.[4] Essentially, Johnson contests the ALJ's RFC finding that she can do "light work," and claims she can only do "sedentary work."

Johnson argues that Dr. Campbell's opinion and Johnson's testimony would limit her to sedentary work. However, as discussed above, the ALJ gave appropriate reasoning for giving no weight to Dr. Campbell's RFC opinions. The ALJ also considered Johnson's testimony and the documentary and testimonial evidence and found that Johnson's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 19.) For example, while Johnson's treating physicians sometimes noted mild or moderate pain elicited by range of motion testing, her range of motion in these joints was typically within normal limits. (Tr. 485, 490, 494, 502, 505, 510, 517.) Although Johnson testified that she suffered from swelling in her whole body, including

---

[4] The guidelines indicate a finding of *not disabled* for someone capable of performing "light work," who is closely approaching advanced age, who has a limited education, and whose previous work was unskilled or semi-skilled. 20 C.F.R. § 404, Subpt. P, App. 2, §§ 202.10, 202.11. However, the guidelines support a finding of *disabled* for someone capable of performing only "sedentary work," but who shares all the other characteristics above. 20 C.F.R. § 404, Subpt. P, App. 2, § 201.09.

her feet and back, she generally presented for her appointments with no edema. (*Compare* Tr. 49-50 *and* Tr. 297, 417, 421, 427, 485, 490, 494, 498, 502, 505, 509, 515, 517, 532, 538.) Additionally, although the alleged onset date of disability was January 8, 2016, the only treatment Johnson sought in 2016 was when she went to an emergency room after developing a rash. (Tr. 370.) She did not establish care with a treating physician until sixteen months later, in April 2017, when she reported to Dr. Campbell's office that she "is trying to get disability. Wants her chart info sent to her lawyer." (Tr. 424.)

The Court acknowledges that there is evidence in the record that tends to support Johnson's complaints of pain. However, treatment for Johnson's medical impairments and associated symptoms has been conservative. Johnson reported to Dr. Critchlow that she was able to control her muscle spasms with medication. (Tr. 350.) Johnson also reported to Dr. Campbell that her back pain and numbness were relieved by pain medication. (Tr. 420, 519.) Dr. Campbell referred Johnson to Dr. Nagam for her joint pain, and Johnson reported to Dr. Nagam that her pain was relieved by heat and over the counter medications, such as ibuprofen. (Tr. 483.) Throughout 2017 and 2018, Johnson was seen regularly by Dr. Campbell and Dr. Nagam, and records indicate she was treated with numerous medications and treatment for pain, including Baclofen, Tramadol, and Hydroxychloroquine. Johnson reported improved joint and musculoskeletal pain to both treaters, and Dr. Campbell found Spironolactone to be effective in controlling Johnson's edema. (Tr. 492, 496, 508, 515, 519, 535.) The Court agrees that the evidence suggests that Johnson's pain has responded well to conservative treatment. Although there is evidence in the record from which the ALJ might have found her pain, spasms, and other symptoms to cause her to be unable to meet the physical demands of light work, there was also contrary evidence, including evidence that medication was effective in controlling Johnson's pain, evidence that Johnson's symptoms

18

improved, and evidence that objective findings did not fully substantiate Johnson's complaints of pain. *See Guilliams v. Barnhart,* 393 F.3d 798, 801 (8th Cir. 2005) ("We do not re-weigh the evidence presented to the ALJ, and we defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." (internal citation omitted)); *Browning v. Sullivan,* 958 F.2d 817, 821 (8th Cir. 1992) ("We will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain."). Based on the foregoing, there is substantial evidence to support the ALJ's findings.

### D.    Motion to Supplement

On July 9, 2020, Johnson filed two pleadings—her reply brief in support of the Complaint and a Motion to Submit Additional Evidence in Support of Plaintiff's Complaint. The reply brief explains that following the filing of the present appeal, Johnson filed another claim for disability, and on June 2, 2020, the Social Security Administration found Johnson disabled as of March 5, 2019. (Doc. 23.) Johnson contends this supports a finding that Johnson was disabled upon attaining her 50th birthday, and the Court should reverse and remand with instructions to find Johnson disabled as of her 50th birthday. *Id.* In the separate motion to submit additional evidence, Johnson seeks to add two documents to the record: 1) Request for Reconsideration dated February 24, 2020 (Doc. 24-1); and 2) Social Security Administration's Notice of Award finding Claimant disabled as of March 5, 2019 (Doc. 24-2). Johnson cites no legal authority for her position that submission of new evidence is warranted.

Defendant responds that the agency's subsequent finding that she became disabled cannot be considered on judicial review because it is not the type of new and material evidence that

warrants remand, nor does it render a prior finding unsupported by substantial evidence. (Doc. 25-1 *citing* 42 U.S.C. § 405(g); *Whitman v. Colvin*, 762 F.3d 701, 708 (8th Cir. 2014)).

The Eighth Circuit has concluded that a district court's consideration of evidence outside of the record before the Commissioner is generally precluded; remand is warranted only upon showing that new evidence is material, *i.e.*, non-cumulative, relevant, and probative of claimant's condition for the time period for which benefits were denied. *See Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). In addition, a claimant seeking to add the new evidence must demonstrate good cause for not having incorporated the new evidence into the administrative record. *See Hinchey v. Shalala*, 29 F.3d 428, 432-33 (8th Cir. 1994) (citation omitted) (finding that good cause is lacking where claimant could have obtained evidence before the administrative record was closed).

Courts are split on whether a grant of benefits, in a subsequent application with an onset date in close proximity to the first application, is new and material evidence warranting a remand. *Compare Hayes v. Astrue,* 488 F.Supp.2d 560, 565 (W.D.Va. 2007) ("[W]here a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence."); *Luna v. Astrue,* 2008 WL 2559400 at *2 (D.Ariz., June 23, 2008) ("Where a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding may constitute new and material evidence."); *Reichard v. Barnhart,* 285 F.Supp.2d 728, 734 (S.D.W.Va. 2003) (holding that the Commissioner's subsequent finding of disability, which commences less than a week later than when the claimant was found to be not disabled, was new and material evidence); *Graham v. McMahon,* 2007 WL 2021893 at *2 (W.D.Va., July 6, 2007); *and Allen v. Commissioner of Social*

20

Case: 1:19-cv-00208-NAB   Doc. #:  27   Filed: 09/27/21   Page: 21 of 24 PageID #: 688

*Security,* 561 F.3d 646, 654 (6th Cir. 2009) (remand is not warranted on the basis of subsequent grant of benefits, by itself, since the subsequent grant of benefits may be based upon a new age classification, a worsening of the claimant's condition, or some other change); *Bruton v. Massanari,* 268 F.3d 824, 827 (9th Cir. 2001) (finding that award of benefits under subsequent application was not new evidence warranting remand where different medical evidence, different time period, and different age classification were involved).

The parties have not cited to Eighth Circuit cases on this issue, and the Court's own research has not revealed binding precedent. However, other courts in this district have taken the stricter construction of the "new and material evidence" standard, finding the subsequent award of benefits, in and of itself, is not a sufficient basis for remand. *See, e.g., Brashier v. Colvin*, No. 4:13-CV-00377-NKL, 2014 WL 2048203, at *3 (W.D. Mo. May 19, 2014) ("Without any further elaboration or discussion of the evidentiary basis for the award of benefits[], the subsequent, favorable determination does not, on its own, compel remand."); *Kruger v. Colvin*, 2014 WL 2884038, at *5 (N.D. Iowa June 25, 2014) ("Simply pointing to a subsequent favorable determination does not constitute new and material evidence warranting a sentence six remand."); *Moraine v. Soc. Sec. Admin.*, 695 F. Supp. 2d 925, 964 (D. Minn. 2010) ("insofar as the Plaintiff seeks a remand based upon a subsequent grant of benefits, standing alone and without any opportunity to consider the basis for that grant, we are unable to find that the grant constitutes new evidence"); *Hodge v. Astrue,* 2008 WL 4561601 at *1–3 (D. Minn., October 10, 2008) (rejecting Magistrate Judge's Report and Recommendation to remand in light of subsequent grant of benefits where the subsequent decision was a part of the Administrative Record, and the Appeals Council expressly rejected that the subsequent decision changed the prior evaluation).

21

Applying these standards to the case at hand, Johnson's request to supplement the record fails at the first step because she points to no new, material evidence establishing her alleged disability prior to the ALJ's decision in this case. The first piece of evidence offered is a Request for Reconsideration form dated February 24, 2020. (Doc. 24-1.) Attached to the Request for Review are Dr. Laurel Campbell's November 26, 2018 Physical RFC Questionnaire, and Dr. David Dahlbeck's December 28, 2016 Psychological Evaluation. The attachments are not "new" evidence. The RFC Questionnaire and Psychological Evaluation are already a part of the record and have been considered by the ALJ and the Court. (*See* Tr. 342-349, 540-544.) The second piece of evidence offered is the June 2, 2020 Notice of Award finding Johnson disabled as of March 5, 2019, the day *after* the ALJ denied Johnson's original claim. (Doc. 24-2.)

Both the February 24, 2020 request for reconsideration and the notice of award with a disability finding as of March 5, 2019 fall outside of the range of dates considered by the ALJ in this case. The Court does not have the records and, thus, cannot determine if the evidence adduced in the second application consisted of substantially similar evidence or if there were substantial changes in Johnson's physical and/or mental condition subsequent to the denial of benefits. In her reply brief in support of her Complaint, Johnson states that the subsequent approval of benefits was "based on entirely the same evidence." However, the request for reconsideration contains a narrative that states Johnson suffers from lupus, degenerative disc disease of the lumbar spine, fibromyalgia, ***and heart disease***. (Doc. 24-1 at 2.) In her first application for benefits, Johnson did not raise heart disease as a condition that limited her ability to work, and it was not discussed by medical examiners or the ALJ. Without additional information regarding the subsequent decision granting benefits, the Court cannot determine the evidentiary basis upon which the Commissioner based that decision.

Johnson has not sufficiently articulated whether the subsequent decision would undermine the ALJ's decision, and the subsequent decision may relate to a deterioration in her other conditions, or to some other intervening cause, such as heart disease. While the temporal proximity certainly suggests that substantially the same evidentiary background was considered in her subsequent application, the Court "require[s] evidence, not mere proximity, to be the critical factor in this analysis." *See Moraine,* 695 F.Supp.2d at 965. Under these circumstances, Johnson has not met her burden to establish the additional evidence offered is new, relevant, and probative of her condition for the time period for which benefits were denied. For these reasons, Johnson's motion to supplement the record is denied.

## IV.    Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (Docs. 1, 21.)

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Supplement Record is **DENIED.** (Doc. 24.)

**IT IS FINALLY ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.


_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2021.